THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUBSPACE OMEGA, LLC,

                Plaintiff,

    v.

AMAZON WEB SERVICES, INC.,

                Defendant.

No. 2:23-cv-01772-TL

JOINT STATUS REPORT AND
DISCOVERY PLAN

Pursuant to Federal Rule of Civil Procedure 26(f), Local Civil Rule 26(f), and the Court's February 23, 2024 Order (Doc. No. 21), Plaintiff Subspace omega, LLC ("Subspace") and Defendant Amazon Web Services, Inc. ("AWS") submit the following Joint Status Report and Discovery Plan.

## 1. Nature and Complexity of the Case

Plaintiff's Statement

Subspace brings this action under, *inter alia*, Section 2 of the Sherman Act for monopolization and attempted monopolization. AWS is the largest cloud computer platform in the world. Subspace was created to provide network optimization services to firms such as Epic

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Games, that used the AWS cloud but needed better low latency[1] connections with its customers

2    playing games such as Fortnite.  AWS had its own network optimization services, but they were

3    inferior to Subspace's services.  The foundation for effective low latency connections on AWS's

4    network and the network of other cloud providers is "peering," which is a means of exchanging

5    internet data directly between an origin network and a destination network.  Peering bypasses

6    intermediate internet exchange points, which results in more efficient and speedy connections.

7    Peering benefits both AWS and Subspace's clients.  As Subspace grew, Subspace also threatened

8    AWS's dominance in the cloud market.  A fully functioning Subspace would have enabled AWS

9    customers to easily migrate their data to other cloud providers, undercutting the AWS business

10    model designed to keep clients captive using AWS.

11         Once AWS determined that Subspace was an actual and potential rival to its monopoly,

12    AWS used its dominant position to exclude Subspace from its cloud.  After initially agreeing to

13    peer with Subspace, AWS suddenly refused to permit further peering and began working to

14    remove the peering connections with Subspace to which it had already agreed.  Service to

15    Subspace's biggest customer, Epic, was degraded to the point where Subspace could no longer

16    provide the low latency connections it had been hired to achieve for gamers playing Fortnite,

17    leading to the demise of Subspace.  AWS then replaced Subspace as Epic's network optimization

18    service provider but provided inferior service.

19         Subspace will be amending its complaint to provide a fuller description of the

20    anticompetitive restraints of trade imposed by AWS.

21         Defendant's Statement

22         This is a straightforward case about a single business relationship in the Middle East that

23    Subspace has attempted to turn into a U.S. antitrust claim. The case arises from Subspace's

24

25

26

---

[1] "Latency" refers to the time that it takes for a data packet to travel from its origin to its destination (for example, from a gamer to the server, or vice versa. The lower the latency, the faster the data packet will reach its destination. Low latency is crucial in keeping customers of gaming platforms satisfied and playing.  Gamers who encounter high latency often lose their game and are discouraged from playing that game again.

JOINT STATUS REPORT
AND DISCOVERY PLAN
(NO. 2:23-CV-01772-TL) - 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  demand that AWS supply Subspace with unlimited free connections to AWS's network

2  anywhere in the world based on AWS having previously connected Subspace to its network for

3  free in the Middle East. That connection in the Middle East was set up for the benefit of Epic

4  Games, the parties' mutual customer. Elsewhere, AWS offered to connect to Subspace's network

5  on standard terms, never refused to connect to Subspace's network, and never terminated

6  Subspace's existing connection. Subspace indicates that Epic Games was its only large customer,

7  and alleges that it went out of business after terminating its contract with Epic Games.

8      Subspace also asserts a Communications Act claim, which ignores existing law and seeks

9  to apply a proposed regulation that is not yet in force and, even if adopted in the future, would

10  not apply retroactively. Even if the case goes forward to discovery, this claim would require

11  minimal discovery before resolution.

12      AWS has filed a Motion to Dismiss and contends that none of Subspace's claims have

13  merit. *See* ECF No. 23.

14  **2.  Consent to Magistrate Judge**

15      No.

16  **3.  Deadline for Joining Additional Parties**

17      The parties agree that the deadline for joining parties should be 28 days after the

18  Scheduling Order is entered.

19  **4.  Class Action**

20      N/A

21  **5.  Exempt Case**

22      N/A

23  **6.  Discovery Plan**

24   **A.  Initial Disclosures**

25      The parties exchanged Initial Disclosures on April 5, 2024.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**B. Subjects, Timing, and Potential Phasing of Discovery**

The parties disagree about when discovery should begin and the subjects that would need to be covered. Their separate positions are stated below. The parties do not propose to phase discovery at this time, but AWS reserves the right to propose phasing if the case proceeds following the Court's ruling on AWS's pending Motion to Dismiss.

Plaintiff's Statement

Subspace objects to AWS's attempt to argue legal issues in this report rather than just identifying the status of disputes that need to be resolved.  Until 4:00 pm on April 19, 2024, AWS withheld the portions of their inputs to the Report that included the argument that they now set forth in their sections of the Report, providing Susbspace insufficient time to respond.

Pursuant to this Court's Order, the parties participated in a telephonic conference on March 22, 2024, at 2:00 pm ET to discuss the issues related to the Rule 26(f) report.  Defendant AWS agreed to draft the initial report and provide it to Plaintiff's Counsel.  At 7:14 pm ET on April 16, 2024, 25 days later, AWS's Counsel provided a draft of the Joint Status Report with several key sections of Defendant's position missing.

Plaintiff's Counsel revised its portion of the report in less than two days and provided all of its inputs to the Joint Status Report at 5:23 pm ET on April 18, 2024.  At 4:00 pm ET on April 19, 2024, on the eve of filling, AWS's Counsel provided its missing sections, which initially constituted two briefs – one arguing against any discovery until the Motion to Dismiss is resolved, and the other briefing its argument against Plaintiff's request for discovery beyond the limitations set forth in the Federal Rules.  This was the first time that AWS included any case citations and legal argument in their sections of the Report.  The extensive legal arguments inserted into the report at the last minute by AWS's Counsel did not provide sufficient time for Plaintiff's Counsel to properly review and respond to AWS's position regarding discovery. After Plaintiff's Counsel objected to the briefing, some of it was removed, but certain legal arguments and citations remain.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Plaintiff considers this report to be just that – a report of positions, and not an opportunity

2  to brief various contentions regarding those positions.  If AWS wants to brief these various

3  issues, then the parties should agree to a proper briefing schedule with deadlines and a full

4  vetting of the issues.  This Report is not the forum for such briefing.  To the extent the Court

5  considers Defendant's arguments to be a motion to stay discovery and to limit the scope of

6  discovery, Plaintiff must be permitted the opportunity to file an opposition to Defendant's

7  putative motions.

8    Plaintiffs believe that discovery will be required regarding the following subjects:

9    1) Who AWS peered with and why;

10    2) Who AWS refused to peer with and why;

11    3) Requirements/standards for peering on AWS, including how they are set and whether

12  they have changed over time;

13    4) The business relationship and other interactions between AWS and Subspace;

14    5) The business relationship and other interactions between AWS and Epic (including

15  after Subspace went out of business);

16    6) The business relationship and other interactions between Epic and Subspace;

17    7) AWS's knowledge about the contract between Epic and Subspace;

18    8) Damages caused by AWS's refusal to peer – to both Subspace and Epic;

19    9) Damages caused by AWS's interference with the business relationship between Epic

20  and Subspace;

21    10) Information regarding the withdrawal of any companies from using AWS as their

22  cloud provider, including, but not limited, to the identity of such companies, the revenues AWS

23  earned from those companies, and the dates of their departures;

24    11) Information related to direct and indirect exit fees to leave the AWS network,

25  including, but not limited to, how they are set, how often they are charged, and to which firms;

26    12) Information and analyses related to AWS's gross and net revenues;

JOINT STATUS REPORT
AND DISCOVERY PLAN
(NO. 2:23-CV-01772-TL) - 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

13) Information and analyses related to gross and net revenues for each AWS line of business, service, or product, including, but not limited to, AWS Direct Connect, AWS Global Accelerator, and any other AWS service proving network optimization;

14) Information and analyses related to the respective market shares of cloud computing platforms;

15) Information and analyses related to AWS's share of Amazon.com, Inc.'s overall profitability;

16) AWS analyses (whether internal or external) of whether AWS peering is, or should be considered as, a common carrier or telecommunications service, including any AWS analyses of the pending FCC Open Internet Notice of Proposed Rulemaking;

17) The means by which AWS offers peering to potential users;

18) Documents describing how AWS markets and sells peering;

19) Identity of any telecommunications carriers or common carriers that use AWS's peering;

20) The AWS onboarding process for users of its peering. AWS policies and practices for negotiating contracts for peering, including any standard terms and conditions or boilerplate contracts;

21) Information regarding any alterations made by or on behalf of AWS to the form or content of the information sent or received by the AWS customer or user via peering;

22) Information related to any functions provided by AWS peering other than the transmission or routing of information, including, but not limited to, network optimization, DNS translation, storage, or caching;

23) Any changes caused by the transmission component of peering to the form or content of the information sent or received by the AWS customer or user; and

24) Information related to consumers' perception of AWS's peering.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Defendant's Statement

2         AWS believes discovery should not commence until after the Court rules on AWS's

3    pending Motion to Dismiss, ECF No. 23 ("Motion"). AWS's Motion is dispositive of Subspace's

4    entire case, which is based on a business relationship in the Middle East, and can be resolved

5    without additional discovery. Even if the Motion is granted in part, it will significantly reduce

6    the scope of discovery, which otherwise will be extremely costly and burdensome, particularly

7    because of Subspace's antitrust claims.  The Supreme Court and Ninth Circuit have recognized

8    the high costs of discovery in antitrust matters and have consistently emphasized that such costs

9    should be avoided in these cases unless the operative pleading survives dismissal.  *See Bell Atl.*

10   *Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007) (collecting sources warning against imposing

11   the high costs of antitrust discovery when complaint cannot survive); *Rutman Wine Co. v. E. & J.*

12   *Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("In antitrust cases [a stay of discovery pending

13   a motion to dismiss] especially makes sense because the costs of discovery in such actions are

14   prohibitive."); *see also In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, at

15   *5 (N.D. Cal. July 24, 2007) (granting stay in antitrust case because "adjudicating the motions to

16   dismiss will shed light on the best course for discovery").  If Subspace intends to proceed with

17   discovery or if the Court is inclined to put a scheduling order in place now, AWS is prepared to

18   file a motion to stay discovery.[2]

19        If the case ultimately proceeds to discovery, however, AWS anticipates conducting

20   discovery on subjects regarding the claims and defenses asserted in the case, including at least:

21   (1) Subspace's attempts to connect to the AWS network and other networks; (2) Subspace's

22

23        [2] AWS's positions in Sections 6.B and 6.E are not motions, "extensive legal argument[]," or "briefing," as
     Subspace asserts. AWS directs the Court to a limited number of cases in support of its positions and is prepared to
     fully brief these issues if necessary.

24        AWS made multiple requests to set a time for the parties to simultaneously exchange written positions on
     disputed issues this week. Subspace ignored those requests, and now insists that it should have received AWS's
25   positions in writing several days before Subspace provided its own positions in writing. AWS explained during the
     26(f) conference its position that discovery should begin after the pending Motion is decided. Subspace had ample
26   time to explain its own positions to the Court.

JOINT STATUS REPORT
AND DISCOVERY PLAN
(NO. 2:23-CV-01772-TL) - 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   agreements with Epic Games; (3) the type, operation, functionality, and performance of network
2   connections and network optimization services; (4) competition for the provision of cloud
3   services and network connections; (5) the purported damages sought by Subspace and its efforts
4   to mitigate those damages.

5       Plaintiff's Response

6       It is likely that Plaintiff will be filing an Amended Complaint as of right pursuant to
7   FRCP 15(a) no later than April 29, 2024.  Plaintiff is willing to hold off serving any discovery
8   until then so that Defendant may file an appropriate motion to stay discovery by that date.

9   **C. Electronically Stored Information**

10       The parties intend to discuss some adjustments to the Western District of Washington's
11   Model Agreement re: Discovery of ESI and to submit an ESI Protocol to the Court for its
12   approval.

13       Subspace's ESI is controlled by Sherwood Partners, Inc. Subspace has informed AWS
14   that Subspace has access to this ESI, will be able to produce it in discovery, and will not object
15   to discovery requests for Subspace, Inc.'s ESI on the grounds that it is not in Subspace's
16   possession, custody, or control. Other than this, the parties do not currently anticipate any special
17   issues relating to ESI.

18   **D. Privilege**

19       The parties intend to discuss some adjustments to the Western District of Washington's
20   Model Stipulated Protective Order and to submit a protective order to the Court for its approval.
21   The protective order will govern the production and handling of privileged, confidential, and
22   otherwise sensitive discovery materials in this matter. It will also provide a procedure, consistent
23   with Fed. R. Evid. 502(b), for clawing back inadvertently disclosed privileged material.

24       Plaintiff's Statement

25       Plaintiff believes that there is broad public interest in how AWS operates, both by
26   consumers and by companies that use AWS. Much of the discovery in this matter revolves

JOINT STATUS REPORT
AND DISCOVERY PLAN
(NO. 2:23-CV-01772-TL) - 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  around the interactions between AWS, Subspace, and Epic Games, which do not implicate

2  proprietary information. As a result, Plaintiff believes that the court's Stipulated Order will be

3  more than sufficient to protect any truly confidential information.

4  **E. Limitations on Discovery**

5  <u>Plaintiff's Statement</u>

6        For the reasons expressed and based upon the discovery identified in Sections 1 and 6.B,

7  *supra*, as well as the complexity of this action, Subspace believes that the following minor

8  deviations from the limitations on discovery under the Federal Rules and the Local Rules are

9  necessary.  Contrary to Defendant's view, this case will not be resolved without discovery into

10  the complex issues raised in Plaintiff's Complaint.  Far from being a "straightforward case about

11  a single contract," this is a case regarding Amazon's pattern and practice of trying to manipulate

12  and exploit its power over its network to force captive customers like Epic Games to utilize only

13  Amazon owned and inferior optimization services to reduce latency.  In fact, the real contracts at

14  issue in this case are those between Amazon and Epic Games, which precluded Epic from using

15  any other network or server to host its popular multi-player game, Fortnight, and the contracts

16  between Epic Games and Subspace, with which Amazon interfered in its attempt to strengthen

17  its monopoly in the optimization of services for gaming platforms on the Amazon network.

18        This case will require an investigation into Amazon's treatment of other companies that

19  attempted to service Amazon's customers in areas in which Amazon was attempting to develop

20  its own captive services.  Given that this is a complex case, involving not only the immediate

21  parties to the action, but also employees of Epic Games and other companies with which AWS

22  engaged in peering and with which AWS refused to engage in peering, the typical FRCP

23  limitations on depositions and interrogatories are insufficient.  Plaintiff will be glad to provide a

24  more explicit "particularized showing" of need in appropriate briefing on this issue.

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Depositions – Limit of 20 depositions (exclusive of experts) of which any Rule 30(b)(6)

2    deposition and up to 4 designated "Important Witnesses" may last up to two days of seven hours

3    (the rest will be subject to the default of seven hours under the Federal Rules);

4    Interrogatories – 50 interrogatories

5    Defendant's Statement

6    AWS does not believe this case warrants any deviation from the limitations on discovery

7    under the Federal Rules and Local Rules. Far from proposing "minor" adjustments, Subspace

8    seeks to *double* the limitations under the Federal Rules of 10 depositions and 25 interrogatories

9    per side. Those limitations—as well as the limitation protecting deponents from sitting for

10   multiple days of a deposition—are appropriate here, and Subspace offers no meaningful

11   argument to the contrary.

12   For the reasons expressed in Sections 1 and 6.B, *supra*, this is a straightforward case

13   about a single contract with a single customer that Subspace alleges it had to terminate. Subspace

14   admits that the focus of its discovery will be the contracts at issue in the narrow relationship

15   among AWS, Epic Games, and Subspace. Its vague reference to discovery related to "other

16   companies" does not make a particularized showing or explain the specific need for imposing the

17   burden of discovery in excess of the limits in the Federal Rules. *See, e.g.*, *Heggem v. Monroe*

18   *Correctional Complex*, 2012 WL 4369299, at *2 (W.D. Wash. Sept. 24, 2012) (denying motion

19   to compel responses to more than 25 interrogatories).

20   **F.  Discovery-Related Orders**

21   As noted above, the parties anticipate seeking approval of an ESI order and protective

22   order. The parties do not anticipate proposing any other discovery-related orders at this time.

23   **7.  Items Set Forth in Local Civil Rule 26(f)(1)**

24   **A.  Prompt Case Resolution**

25   The parties are aware of the benefits of early resolution but have not engaged in

26   settlement discussions at this time.

JOINT STATUS REPORT
AND DISCOVERY PLAN
(NO. 2:23-CV-01772-TL) - 10

**B. Alternative Dispute Resolution**

AWS believes any form of ADR is premature while its Motion to Dismiss is pending. The parties have discussed the possibility of engaging in ADR such as mediation at a later point in time.

**C. Related Cases**

The parties are not aware of any related cases.

**D. Discovery Management**

See *supra*, Section 6.

**E. Anticipated Discovery**

See *supra*, Section 6.B.

**F. Phasing Motions**

The parties do not anticipate the need to phase motions at this time.

**G. Preservation of Discoverable Information**

See *supra*, Section 6.C.

**H. Privilege**

See *supra*, Section 6.D.

**I. Model Protocol for Discovery of ESI**

See *supra*, Section 6.C.

**J. Alternatives to Model Protocol**

See *supra*, Section 6.C.

**8. Date Discovery Will Be Completed**

As discussed in Section 6.B, the parties disagree on when discovery should begin. Otherwise, the parties have agreed on an appropriate discovery schedule in the case. The parties propose that the discovery period last 11 months.

**9. Bifurcation**

The parties do not believe that bifurcation of issues would be necessary or helpful.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**10. Pretrial Statements and Pretrial Order**

The parties intend to comply with, and not dispense with, pretrial statements and the pretrial order called for by LCR 16 and 16.1.

**11. Individualized Trial Program**

The parties do not intend to use the Individualized Trial Program options set forth in LCR 39.2.

**12. Alternative Dispute Resolution Options**

The parties do not intend to use the ADR options set forth in LCR 39.1.

**13. Shortening or Simplifying the Case**

At this time, the parties do not have further suggestions for shortening or simplifying the case.

**14. Trial Date**

As discussed in Section 6.B, the parties disagree on when discovery should begin and therefore when subsequent case deadlines would occur. But the parties agree that the case can be ready for trial, if necessary, 19 months after discovery begins. This would include 11 months for fact and expert discovery, *see supra*, Section 8; four months for the parties to brief summary judgment and *Daubert* motions; and four months from the completion of briefing those motions to the trial date, in line with the Court's Non-Patent Civil Trial Scheduling Template.

The parties believe that this is an aggressive schedule that reflects some additional time beyond the Court's template schedule to allow for the kind of expert discovery and associated *Daubert* briefing that is often required in antitrust cases.

**15. Jury or Non-Jury Trial**

The parties disagree about this topic.

Plaintiff's Statement

Plaintiffs have demanded a jury trial of this matter, to which they are entitled under the U.S. Constitution.  Subspace does not believe that any Customer Agreement as asserted by AWS

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    was entered into by Subspace.  Even if someone at Subspace entered into any such agreement,

2    based upon Plaintiff's understanding of those general online terms of service that it has

3    reviewed, those service terms have no application to the claims in Plaintiff's Complaint.

4            At best, AWS "believes" that "Subspace has waived its right to a jury trial in this case."

5    AWS has provided no evidence to support that contention.  Instead, AWS claims that Subspace

6    "must have" entered into this "type" of a contract but cannot establish the terms or the specific

7    contract to which Subspace allegedly entered.  As AWS has stated

8            The link [AWS Counsel] provided is to the language of a contract (not merely
9            general terms of service) that AWS enters into with some of its customers. We are
             continuing to investigate Subspace's use of AWS's services to identify the
10           specific contract that is operative here, but based on our investigation to date we
             understand that Subspace agreed to be bound by the AWS Customer Agreement
11           and that the contract accepted by Subspace included a jury waiver clause either
             identical to or not materially different from the one in the contract we have
12           pointed you to.

13   Email from A. Freedman to T. Urban (4/18/2024).  This is not a sufficient basis upon which to

14   deny Subspace its constitutional right to a jury trial, even were such a clause applicable to

15   Subspace's antitrust and other non-contract claims.

16           Defendant's Statement

17           Subspace has waived its right to a jury trial in this case. The Customer Agreement

18   entered into between Subspace and AWS included a waiver by both parties of their right to a jury

19   trial on any claim relating in any way to Subspace's use of any AWS services. The agreement

20   applies here and AWS intends to enforce its agreement with Subspace.

21           AWS has provided Subspace with a copy of the current text of the AWS Customer

22   Agreement.[3]

23   **16. Number of Trial Days**

24           Plaintiff's Position: 15 days

25

---

26       [3] *See* https://aws.amazon.com/agreement/. While Subspace's block quote is represented accurately, Subspace otherwise puts quotation marks around statements that neither AWS nor its counsel have made.

JOINT STATUS REPORT
AND DISCOVERY PLAN
(NO. 2:23-CV-01772-TL) - 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Defendant's Position: 5 days

2    **17. Trial Counsel**

3    Plaintiff's Counsel

4    **Fletcher, Heald & Hildreth, PLC**
     Tony S. Lee (pro hac vice)

5    Thomas F. Urban II (pro hac vice)
     1300 17th Street North, Suite 1100

6    Arlington, Virginia 22209
     Telephone: (703) 812-0400

7    Facsimile: (703) 812-0486
     lee@fhhlaw.com

8    urban@fhhlaw.com
     williams@fhhlaw.com

9

10   **Sampson Dunlap LLP**
     George W. Sampson (WSBA No. 23606)

11   600 Stewart Street, Suite 300
     Seattle, WA 98101

12   Telephone (206) 369-3962
     Facsimile (206) 260-1318

13   george@sampsondunlap.com

14

15   **Breskin Johnson & Townsend PLLC**
     Roger Townsend (WSBA No. 25525)

16   1000 Second Avenue, Suite 3670
     Seattle, Washington 98104

17   Telephone: 206-652-8660
     rtownsend@bjtlegal.com

18

19   Defendant's Counsel

20   **Cleary Gottlieb Steen & Hamilton LLP**
     Kenneth S. Reinker (*pro hac vice*)

21   George S. Cary (*pro hac vice*)
     Alan B. Freedman (*pro hac vice*)

22   2112 Pennsylvania Ave., NW
     Washington, DC 20037

23   Telephone: (202) 974-1500
     Facsimile: (202) 974-1999

24   kreinker@cgsh.com

25   gcary@cgsh.com
     afreedman@cgsh.com

26

JOINT STATUS REPORT
AND DISCOVERY PLAN
(NO. 2:23-CV-01772-TL) - 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**Perkins Coie LLP**
Shylah R. Alfonso (WSBA No. 33138)
Tiffany L. Lee (WSBA No. 51979)
1201 Third Avenue, Suite 4900
Seattle, Washington 93101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
salfonso@perkinscoie.com
tiffanylee@perkinscoie.com

**18. Trial Date Conflicts**

The parties do not currently have any conflicts that the Court needs to be aware of.

**19. Service**

AWS was served on February 6, 2024. It is the only defendant.

**20. Scheduling Conference**

The parties request a scheduling conference to resolve the several disputes presented in this Joint Status Report. The parties suggest that the conference be held remotely by telephone or videoconference.

**21. Corporate Disclosure Statements**

Subspace filed its Rule 7.1 Corporate Disclosure Statement on November 27, 2023, ECF No. 6. AWS filed its Rule 7.1 Corporate Disclosure Statement on February 16, 2024, ECF No. 17.

**22. Certification Regarding Applicable Rules**

The parties' counsel certify that they have reviewed Judge Lin's chambers procedures, the Local Rules, General Orders, and the applicable Electronic Filing Procedures.

**23. Certification Regarding Standing Order**

The parties' counsel certify that they have reviewed and complied with Judge Lin's Standing Order Regarding 28 U.S.C. § 455 and Canon 3 of the Code of Conduct for United States Judges.

Dated: April 19, 2024

By:    */s/ Alan B. Freedman*
Cleary Gottlieb Steen & Hamilton LLP
George S. Cary (*pro hac vice*)
Kenneth S. Reinker (*pro hac vice*)
Alan B. Freedman (*pro hac vice*)
gcary@cgsh.com
kreinker@cgsh.com
afreedman@cgsh.com
2112 Pennsylvania Ave., NW
Washington, DC 20037
Telephone: (202) 974-1647
Facsimile: (202) 974-1999

*/s/ Shylah R. Alfonso*
Perkins Coie LLP
Shylah R. Alfonso (WSBA No. 33138)
Tiffany L. Lee (WSBA No. 51979)
salfonso@perkinscoie.com
tiffanylee@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, Washington 93101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

*Attorneys for Defendant Amazon Web Services, Inc.*

*/s/ Tony S. Lee*
Fletcher, Heald & Hildreth, PLC
Tony S. Lee (pro hac vice)
Thomas F. Urban II (pro hac vice)
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
Telephone: (703) 812-0400
Facsimile: (703) 812-0486
lee@fhhlaw.com
urban@fhhlaw.com

*/s/ Roger Townsend*
Breskin Johnson & Townsend PLLC
Roger Townsend, WSBA #25525
1000 Second Avenue, Suite 3670
Seattle, Washington 98104
Telephone: 206-652-8660
rtownsend@bjtlegal.com

*Attorneys for Plaintiff Subspace omega, LLC*

JOINT STATUS REPORT
AND DISCOVERY PLAN
(NO. 2:23-CV-01772-TL) - 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000